**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DONALD SOUCY, on behalf of
himself and others similarly situated

       Plaintiff,                       Case Number: 1:14-cv-05935

v.

CAPITAL MANAGEMENT
SERVICES, LP, and WORLDWIDE
ASSET PURCHASING II, LLC

       Defendants.
_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL**
**ARBITRATION**

### Introduction

Bank of America agreed, as part of 2010 class action settlement, that it would not only
"remove any and all Arbitration Clauses and the Class Action Waiver Clauses from its United
States Cardholder Agreements," but also that it would not "enforce an Arbitration Clause or Class
Action Waiver Clause against a member of the Settlement Class based on currently existing or
pre-existing United States Cardholder Agreements." Because Mr. Soucy is a member of the
settlement class, the subject arbitration agreement that Capital Management Services, LP and
Worldwide Asset Purchasing II, LLC ("Defendants") now seek to enforce—an agreement found
in a 2004 Bank of America cardholder agreement—is not enforceable. In fact, for all intents and
purposes, it does not exist.

### Applicable Standard

"The legal standards that govern this Court's adjudication of a motion to
compel arbitration are not new; they were set forth in a trilogy of cases decided by the Supreme

1

Court in 1960, known as the *Steelworkers Trilogy*." *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1000 (N.D. Ill. 2013), *aff'd*, 556 F. App'x 543 (7th Cir. 2014).

First, "arbitration is strictly a matter of contract, and a party cannot be compelled to submit any dispute to arbitration that he has not agreed to so submit." *Id*. "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Id*. (citing *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)).

Second, "the question of arbitrability is indisputably an issue for judicial resolution, and unless the parties clearly and unambiguously provided otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court and not an arbitrator." *Id*. at 1001 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986)).

Third, "the evidentiary standard that a party attempting to avoid compelled arbitration must meet" is the same as the standard imposed in connection with a motion for summary judgment under Federal Rule of Civil Procedure 56. *Id*. (collecting cases). Consequently, a "triable issue of fact concerning the existence of the agreement to arbitrate" precludes a court from granting, outright, a motion to compel arbitration. *See id*. As well, "evidence submitted by the party opposing arbitration is accepted as true, and all justifiable inferences must be drawn in his favor." *Id*. (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).

Fourth, "in ascertaining whether the parties agreed to submit a particular grievance to arbitration, a court *must not* rule, evaluate, weigh, or in any way pass on the potential merits of the underlying claims." *Id*. (citing *Steelworkers v. Am. Mfg. Co.,* 363 U.S. 564, 568 (1960)).

At the end of the day, this all means "that in order to compel arbitration, the court must find (1) that a written arbitration agreement exists between the parties; (2) that there is a dispute

among the parties within the scope of the arbitration agreement; and (3) that one of the parties is refusing to comply with the arbitration agreement by declining to participate in arbitration." *Id.* at 1002 (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 690 (7th Cir. 2005)). And potentially more important to this matter, "[i]f the existence of an arbitration agreement is genuinely disputed, courts must proceed to trial to resolve that issue." *Id.* (citing 9 U.S.C. § 4).

## Argument

**I.    In 2010, Bank of America agreed not to enforce arbitration provisions and class action waivers included in any of its "currently existing or pre-existing United States Cardholder Agreements."**

Through their initial class action complaint, the plaintiffs in *Ross v. Bank of America, N.A. (USA)* "challenge[d] the inclusion of a specific collusive term—the arbitration clause—imposed by each of the conspirators." No. 1:05-cv-07116-WHP-JCF, Document 1, ¶ 1 (S.D.N.Y. August 11, 2005), attached as Exhibit A. In particular, they explained:

> Through their participation in numerous meetings and other communications, and as an exercise of their immense market power, Defendants combined, conspired and agreed to implement and/or maintain mandatory arbitration clauses as a term and condition of sale. The primary purpose of Defendants' arbitration clauses is to eliminate access to judicial fora and collective remedial action, including class actions, by their cardholders. Defendants' agreement to impose or maintain collusive arbitration clauses in their respective adhesion contracts with their cardholders (which Defendants refer to as "cardholder agreements") constitutes a *per se* violation of the antitrust laws, is an anti-competitive restraint on trade and serves no procompetitive purpose. As such, the arbitration clauses in the Defendants' cardholder "agreements" should be declared unlawful and the clauses voided.

*Id.*, ¶ 2.

On February 23, 2010, the parties in *Ross* reached a settlement agreement. *See* February 23, 2010 Stipulation and Agreement of Settlement with Bank of America, N.A. (USA) (N/K/A

FIA CARD SERVICES, N.A.) and Bank of America, N.A., attached as Exhibit B. The settlement

agreement provides, in part:

> Bank of America will remove any and all Arbitration Clauses and the Class
> Action Waiver Clauses from its United States Cardholder Agreements . . . .
>
> *     *     *
>
> Effective on the MOS Date, Bank of America will not seek to enforce an
> Arbitration Clause or Class Action Waiver Clause against a member of the
> Settlement Class based on currently existing or pre-existing United States
> Cardholder Agreements . . . .

*Id.*, Section 3(a), (c).

Quite significantly, the parties defined the settlement class as:

> A class consisting of all persons holding during the Period in Suit a Credit
> Card under a United States Cardholder Agreement with any of the Bank
> Defendants (including, among other cards, cards originally issued under the
> MBNA, Bank One, First USA and Providian brands), but not including
> members of the proposed Subclass, subject to an Arbitration Clause relating
> to their cards (the "Class")[.]

*Id.*, Section 4(a).

Similarly important, the parties defined "Period in Suit" as "the period from the first Bank

Defendant's adoption of an Arbitration Clause in its consumer Credit Card agreement through the

date of execution of this Settlement Agreement." *Id.*, Section 2(w).

On March 18, 2010, the United States District Court for the Southern District of New York

preliminarily approved the settlement agreement. *See Ross*, No. 1:05-cv-07116-WHP-JCF,

Document 216 (S.D.N.Y. March 18, 2005), attached as Exhibit C. And on July 22, 2010 the court

issued its final judgment and order. *See id.*, Document 251 (S.D.N.Y July 22, 2010), attached as

Exhibit D.

## II.    Mr. Soucy is one of the individuals against whom Bank of America agreed not to enforce an arbitration provision and class action waiver.

Mr. Soucy opened his account with Bank of America "on or about June 10, 2004." Doc. 24-1, ¶ 6. "Consistent with Bank of America's standard business practices, Bank of America mailed Mr. Soucy's credit card to him together with a copy of his Cardholder Agreement when the Account was opened." *Id*., ¶ 10. Mr. Soucy is, therefore, a member of the settlement class. *See* Exhibit B, Section 4(a).

This means that per the terms of the settlement agreement in *Ross*, Bank of America not only "remove[d] any and all Arbitration Clauses and the Class Action Waiver Clauses" from Mr. Soucy's "Cardholder Agreement," but also agreed "not seek to enforce an Arbitration Clause or Class Action Waiver Clause against [Mr. Soucy] based on [his] currently existing or pre-existing United States Cardholder Agreement[]." *See id*, Section 3(a), (c).

Noteworthy, as part of the settlement agreement, and related final judgment and order, each member of the settlement class—of which Mr. Soucy is a member—"release[d] and forever discharge[d] the Released Parties from the Released Claims." *Id*. at Section 12(b).[1] In other words, by accepting Bank of America's promise not to enforce an arbitration agreement or class action waiver against him, Mr. Soucy gave up specific rights on which he could have otherwise acted.

## III.    Defendants, as Bank of America's purported assignees, cannot enforce a right that Bank of America does not have.

Defendants seek to enforce against Mr. Soucy the very arbitration agreement and class action waiver that Bank of America nullified, and agreed not to enforce, by way of the settlement agreement in *Ross*. *See* Doc. 24 at 2 (referencing "[a] true and accurate copy of the Cardholder

---

[1]    "Released Claim" and "Released Parties" are defined at Section 2(aa), (bb) of the settlement agreement.

Agreement that governs plaintiff's Bank of America account."). Of note, they do so as Bank of America's purported "employees, agents or assigns." *Id.* at 3; *see also id.* at 7 ("[T]he Arbitration Agreement extends to agents and assigns and thus extends to both CMS and WAP II.").

Specifically, Defendants suggest that because "[t]he Account was purchased by WAP II on March 19, 2007, which acquired all rights under the agreement," *see id.* at 3, and since "the Account was subsequently placed with CMS for collection on November 20, 2013," *see id.*, that they are entitled to enforce what they characterize as "a binding and enforceable arbitration agreement, which is subject to the FAA and precludes litigation of his claims in this court." *See id.* at 6. Stated otherwise, Defendant's argue that even though "CMS is not a signatory to the Agreement containing the arbitration clause," this fact "does not defeat its own right to compel arbitration" because Defendants effectively stand in the shoes of Bank of America. *See id.* at 8.[2]

Defendants fail, however, to acknowledge in their motion to compel arbitration and related memorandum, *see* Doc. 23-24, the existence of the settlement agreement in *Ross*.

Without more, if Defendants are, as they suggest, Bank of America's "agents and assigns," they "stand in the shoes of [Bank of America] and assume[] the same rights, title and interest possessed by [Bank of America]." *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 864 (7th Cir. 1997). It follows that Defendants, as Bank of America's assignees, cannot enforce a right that Bank

---

[2]     Defendants apparently rely, completely, on an agency-based theory as the cardholder agreement at issue makes clear that only Mr. Soucy or Bank of America can request arbitration under the agreement: "Any dispute, claim, or controversy ("Claim") by or between you and us (including each other's employees, agents or assigns) arising out of or relating to this Agreement, your Account, or the validity or scope of any provision of this Agreement including this arbitration clause shall, upon election *by either you or us*, be resolved by binding arbitration." Doc. 24-1 at 5, Section 7.19 (emphasis added). Section 1.2 of the cardholder agreement at issue reads: "'We,' 'us,' and 'our' refer to Bank of America, N.A. (USA). 'You,' 'your,' and 'yours' refer to any person (a) whose name appears on a Card or Statement or who uses this Account, or (b) who otherwise agrees to be liable on the Account." Doc. 24-1 at 5, Section 1.2.

of America does not have. *See id*. In particular, Defendants are bound by Bank of America's decision to give up its right to enforce an arbitration agreement or class waiver against Mr. Soucy. *See Kane v. Magna Mixer Co.,* 71 F.3d 555, 563 (6th Cir. 1995) (holding that an assignee is bound by an assignor's waiver).[3]

## Conclusion

In order to compel arbitration, Defendants must first show that there exists a valid agreement to arbitrate. *Johnson*, 928 F. Supp. 2d at 1002. Importantly, they "bear[] the burden of establishing the existence of an agreement to arbitrate by a preponderance of the evidence, just as the party seeking relief under any other alleged contract has the burden of proving that contract's existence." *Burgess v. Qwest Corp.*, 546 F. Supp. 2d 1117, 1120 (D. Or. 2008) (internal quotation omitted).

Here, Defendants cannot establish the existence of a valid, applicable agreement to arbitrate the claims at issue. Indeed, the arbitration agreement that they seek to enforce is an unenforceable nullity. And to the extent that Defendants can credibly suggest otherwise, they will simply create an issue of fact for a jury to resolve.

---

[3]     That the settlement agreement requires Bank of America to apply its terms to "any Consumer/Small Business Credit Card portfolios that Bank of America acquires after the date of execution of this Settlement Agreement," *see* Exhibit B, Section 13(a), and that it also requires Bank of America to contract with third parties to which it transfers or assigns accounts after the date of the settlement agreement, to enforce the terms of the settlement agreement, *see id*., Section 13(b), does not alter the retroactive effect of the agreement in whole—which is that "*Bank of America will not seek to enforce an Arbitration Clause or Class Action Waiver Clause against a member of the Settlement Class based on currently existing or pre-existing United States Cardholder Agreements . . . . Id*., Section 3(c) (emphasis added).

Date November 6, 2014          Respectfully Submitted,

/s/ Aaron D. Radbil
Aaron D. Radbil
Greenwald Davidson PLLC
5550 Glades Rd, Ste. 500
Boca Raton, FL 33431
Phone: (561) 826-5477
Fax: (561) 961-5684
aradbil@mgjdlaw.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed on November 6, 2014, via the

Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/ Aaron D. Radbil
Aaron D. Radbil