IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD JOSEPH SOUCY, JR., on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL MANAGEMENT SERVICES, L.P. and WORLDWIDE ASSET PURCHASING II, LLC, <br><br> Defendants. | No. 14 C 5935 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 4, 2014, plaintiff Donald Joseph Soucy, Jr. ("Soucy") filed this putative class action against defendants Capital Management Services, L.P. ("CMS") and Worldwide Asset Purchasing II, LLC ("WAP II") (collectively, "Defendants"), alleging that Defendants violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, when Defendants "implied" they had a legal right to collect and share nonpublic information about Soucy without his prior consent, including information about a debt Soucy currently owes to WAP II. (Dkt. No. 1 ("Compl.") ¶¶ 45-60.) Defendants have moved (Dkt. No. 23) to compel arbitration pursuant to an agreement between Soucy and the debt's originator, Bank of America ("BOA"). Defendants' memorandum further requests an order dismissing Soucy's lawsuit (Dkt. No. 24 ("Defs.' Mem.") at 10), which the court construes as a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.[1] For the reasons explained below, Defendants' motion (Dkt. No. 23) is granted and the case is dismissed.

BACKGROUND[2]

The debt giving rise to this lawsuit originates from a credit card Soucy obtained from BOA on June 10, 2004. (Compl. ¶ 13; Dkt. No. 24-1 ("Kaminski Decl.") ¶ 6.) When BOA sent Soucy his new card in 2004, the mailing envelope contained a cardholder agreement (Kaminski Decl. Ex. A ("Cardholder Agreement")) setting forth the terms of Soucy's account. The Cardholder Agreement warned that any use of the credit card or failure to cancel the card within three days constituted acceptance of the terms, (Cardholder Agreement § 1.1.), and further warned that BOA reserved the right to change, add, or delete any term condition, service or feature of Soucy's account (*Id.* § 7.14). Soucy accepted the terms of the Cardholder Agreement by using his credit card to accumulate a $41,596.11 balance, which he subsequently failed to repay. (Compl. ¶¶ 12-14.) On March 19, 2007, BOA "charged off [Soucy's account] for non-payment" and sold it to WAP II. (Kaminski Decl. ¶ 11; Dkt. No. 24-2 ("Lundberg Decl.") ¶ 6.)[3]

Soucy's Cardholder Agreement also contained an arbitration cause and class action

---

[1] The Seventh Circuit has instructed that motions to dismiss pursuant to an arbitration agreement should be evaluated under Rule 12(b)(3) for improper venue. *See, e.g.*, *Gabbanelli Accordions & Imports, LLC* v. *Gabbanelli*, 575 F.3d 693, 695 (7th Cir. 2009).

[2] When ruling on a motion to dismiss for improper venue, a district court may consider documents outside but integral to the pleadings, such as the agreements giving rise to the alleged obligation to arbitrate. *See Faulkenberg* v. *CB Tax Franchise Systems, LP*, 637 F.3d 801, 809-10 (7th Cir. 2011); *Continental Gas Co.* v. *American Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

[3] WAP II President Richard Lundberg's Declaration states that WAP II purchased Soucy's account on March 19, 2007, (Lundberg Decl. ¶ 6), while BOA Vice President Sandra Kaminski's Declaration states that BOA sold Soucy's account in May 2007 (Kaminski Decl. ¶ 11). Because the discrepancy is irrelevant to the issues in this case, the court adopts Lundberg's more precise date of sale.

waiver, which stated:

> 7.19 Arbitration. Any dispute, claim, or controversy ("Claim") by or between you and us (including each other's employees, agents or assigns) arising out of or relating to this Agreement, your Account, or the validity or scope of any provision of this Agreement including this arbitration clause shall, upon election by either you or us, be resolved by binding arbitration. Arbitration shall take place before a single arbitrator on an individual basis without resort to any form of class action. Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration.
>
> * * *
>
> **YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND US FROM HAVING A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH COURT, OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS. EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION IF YOU OR WE ELECT TO ARBITRATE.**

(Cardholder Agreement § 7.19) (bold type in original).

On August 11, 2005, while Soucy's BOA credit card remained active, a group of plaintiffs filed a class action lawsuit against BOA and other major card issuers in the United States District Court for the Southern District of New York, alleging that the card issuers had conspired and agreed to implement and maintain mandatory arbitration clauses as a term and condition of sale, the purpose of which was to foreclose cardholders' access to judicial fora and collective remedial action, including class actions. *Ross* v. *Bank of Am., N.A. (USA)*, No. 05 C 7116 (S.D.N.Y.) (Dkt. No. 1 ¶ 2) (filed in this case as Dkt. No. 26-1 Ex. A at 3). The case was transferred into a multidistrict litigation before Judge William H. Pauley, III.

On October 6, 2009, more than two years after BOA sold Soucy's account to WAP II, Judge Pauley approved "[a] class consisting of all persons holding during the Period in Suit a Credit Card under a United States Cardholder Agreement with the Bank Defendants," (Dkt. No. 26-2 § 4(a)), where the "Period in Suit means the period from the first Bank Defendant's

adoption of an Arbitration Clause in its consumer Credit Card agreement through [February 23, 2010]," (Dkt. No. 26-2 § 2(w)).

On February 23, 2010, nearly three years after BOA sold Soucy's account to WAP II, BOA entered into a settlement agreement with the class in *Ross*. (Dkt. No. 26-2 ("Settlement Agreement").) As part of the Settlement Agreement, BOA agreed to the following relevant obligations:

> Section 3(a). Bank of America will remove any and all Arbitration Clauses and the Class Action Waiver Clauses from its United States Cardholder Agreements by mailing new agreements, change-in-terms notices or other form of notice to (i) all of its Consumer/Small Business Credit Card cardholders who will receive a 2010 annual privacy notice pursuant to 12 C.F.R. § 40.5, and (ii) all cardholders of newly-opened Consumer/Small Business Credit Card accounts who have Arbitration Clauses or Class Action Waiver Clauses in their United States Cardholder Agreements with Bank of America. Such Mailings will be substantially completed within sixty (60) days following May 1, 2010.
>
> \* \* \*
>
> Section 3(c). Effective on [December 11, 2009], Bank of America will not seek to enforce an Arbitration Clause or Class Action Waiver Clause against a member of the Settlement Class based on currently existing or pre-existing United States Cardholder Agreements . . .
>
> \* \* \*
>
> Section 13(b). With respect to any Bank of America Consumer/Small Business Credit Card cardholder agreement, account or obligation that Bank of America transfers or assigns to a third party after February 1, 2010, Bank of America will contract with said third party for said third party to abide by the provisions of Paragraph 3(c) above.

(Settlement Agreement §§ 3(a), 3(c), 13(b).)

The parties do not state whether Soucy made any effort to pay down his debt, or whether WAP II made any effort to collect its debt, over the course of the next three years.

On November 20, 2013, WAP II placed Soucy's debt with CMS for collection. (Lundberg Decl. ¶ 7.) CMS subsequently sent Soucy a debt collection letter containing the

statements that Soucy alleges violate the FDCPA. Soucy filed suit under the FDCPA and Defendants have moved to dismiss the proceedings in this court and compel arbitration according to Soucy's Cardholder Agreement with BOA. For the reasons explained below, that motion (Dkt. No. 23) is granted.

## LEGAL STANDARD

### I. Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has recognized the FAA as the embodiment of "a liberal federal policy favoring arbitration agreements," and has directed that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (superseded by statute on other grounds). Accordingly, in the Seventh Circuit, "arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co.* v. *Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4).

### II. Rule 12(b)(3) Motion to Dismiss

Although courts have frequently treated motions to compel arbitration as assertions that they are deprived of subject matter jurisdiction, the Seventh Circuit has instructed district courts that a motion seeking dismissal based on an arbitration agreement should be decided under Rule 12(b)(3), not Rule 12(b)(1). *Gabbanelli Accordions & Imports, LLC* v. *Gabbanelli*, 575 F.3d 693, 695 (7th Cir. 2009). A Rule 12(b)(1) motion asserts that the court lacks subject matter over

the lawsuit, which is something that can never be forfeited or waived. *Union Pac. R.R. Co.* v. *Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81 (2009). As the present case makes clear, however, an agreement to arbitrate can and often is waived. Because an arbitration agreement is subject to a waiver, it is more akin to a forum-selection clause and therefore should be decided under Rule 12(b)(3). *Gabbanelli*, 575 F.3d at 695; *see also Auto. Mechs. Local 701 Welfare & Pension Funds* v. *Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007).

In the context of a defendant's motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper. *See Nathan* v. *Morgan Stanley Renewable Dev. Fund, LLC,* No. 11 C 2231, 2012 WL 1886440, at *11 (N.D. Ill. May 22, 2012) (Lefkow, J.) (citing *Interlease Aviation Invs. II (Aloha) LLC.* v. *Vanguard Airlines, Inc.,* 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003) (Alesia, J.)). In making this determination, a "court may examine facts outside the complaint . . . ." *First Health Grp. Corp.* v. *Sanderson Farms, Inc.,* No. 99 C 2926, 2000 WL 139474, at *2 (N.D. Ill. Jan.31, 2000) (Manning, J.) (citations omitted).

## ANALYSIS

Soucy does not dispute that the subject matter of his lawsuit—CMS's allegedly improper communication—is within the scope of the arbitration provision of his Cardholder Agreement, nor does he contend that WAP II lacks the legal authority to enforce BOA's former rights under the Cardholder Agreement. BOA assigned its rights to WAP II in 2007 and "elementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor." *Plumb* v. *Fluid Pump Serv., Inc.*, 124 F.3d 849, 864 (7th Cir. 1997) (citing *Moutsopoulos* v. *American Mut. Ins. Co. of Boston*, 607 F.2d 1185, 1189 (7th Cir. 1979)). Instead, Soucy argues that the Cardholder Agreement's arbitration and class action provisions ceased to exist after BOA waived

its right to enforce the provisions as part of the Settlement Agreement in *Ross* and, having waived its rights, BOA could not have assigned them to WAP II through the sale of Soucy's account. The court agrees with Soucy's premise, but not his timeline. On February 23, 2010—the date of the *Ross* settlement—BOA no longer had the legal authority to amend or waive any terms of Soucy's Cardholder Agreement because BOA had assigned all of its rights to WAP II almost three years earlier on March 19, 2007. Furthermore, the plain language of the Settlement Agreement does not accord any retroactive relief to cardholders whose accounts BOA did not own on February 10, 2010.

Even if BOA had waived its rights in the manner Soucy asserts, it is apparent from the undisputed facts that BOA lacked the authority to do so. Soucy concedes that BOA sold his account on March 19, 2007—thirty-five before the *Ross* settlement—and that the sale included the rights, title, and interest possessed by BOA on that date. (Dkt. No. 26 at 6.) BOA's rights on March 19, 2007 included, among other things: (i) an arbitration provision; (ii) a class action waiver; and (iii) the right to amend Soucy's Cardholder Agreement. (Cardholder Agreement §§ 7.14, 7.19.) As discussed above, elementary contract law provides that the assignee assumes the rights possessed by the assignor. *Plumb*, 124 F.3d at 864. It follows that the assignor no longer possesses (and lacks the authority to modify) those rights after the assignment, which is what Soucy claims BOA did here when it entered into the Settlement Agreement on February 23, 2010. Soucy cites one case, *Kane* v. *Magna Mixer Co.*, 71 F.3d 555, 563 (6th Cir. 1995), for the proposition that an "assignee is bound by an assignor's waiver," (Dkt. No. 26 at 7), but he fails to mention that the waiver at issue in *Kane* occurred *before* the assignment. *Kane*, 71 F.3d at 563. Soucy has provided no authority to support his retroactive waiver theory and the court's independent legal research has similarly failed to uncover any such holding. The dearth of case

its right to enforce the provisions as part of the Settlement Agreement in *Ross* and, having waived its rights, BOA could not have assigned them to WAP II through the sale of Soucy's account. The court agrees with Soucy's premise, but not his timeline. On February 23, 2010—the date of the *Ross* settlement—BOA no longer had the legal authority to amend or waive any terms of Soucy's Cardholder Agreement because BOA had assigned all of its rights to WAP II almost three years earlier on March 19, 2007. Furthermore, the plain language of the Settlement Agreement does not accord any retroactive relief to cardholders whose accounts BOA did not own on February 10, 2010.

Even if BOA had waived its rights in the manner Soucy asserts, it is apparent from the undisputed facts that BOA lacked the authority to do so. Soucy concedes that BOA sold his account on March 19, 2007—thirty-five before the *Ross* settlement—and that the sale included the rights, title, and interest possessed by BOA on that date. (Dkt. No. 26 at 6.) BOA's rights on March 19, 2007 included, among other things: (i) an arbitration provision; (ii) a class action waiver; and (iii) the right to amend Soucy's Cardholder Agreement. (Cardholder Agreement §§ 7.14, 7.19.) As discussed above, elementary contract law provides that the assignee assumes the rights possessed by the assignor. *Plumb*, 124 F.3d at 864. It follows that the assignor no longer possesses (and lacks the authority to modify) those rights after the assignment, which is what Soucy claims BOA did here when it entered into the Settlement Agreement on February 23, 2010. Soucy cites one case, *Kane* v. *Magna Mixer Co.*, 71 F.3d 555, 563 (6th Cir. 1995), for the proposition that an "assignee is bound by an assignor's waiver," (Dkt. No. 26 at 7), but he fails to mention that the waiver at issue in *Kane* occurred *before* the assignment. *Kane*, 71 F.3d at 563. Soucy has provided no authority to support his retroactive waiver theory and the court's independent legal research has similarly failed to uncover any such holding. The dearth of case

law is predictable because common sense dictates that the assignor relinquishes his or her rights through the assignment. BOA could not, for example, sell its right to recover Soucy's outstanding balance and subsequently waive Soucy's obligation to repay his debt. The same logic applies to the arbitration provision and class action waiver, both of which enhanced the value of Soucy's account at the time of its sale. BOA redeemed that value by selling Soucy's account on March 19, 2007 and therefore lost the ability to waive any right or amend any term after that date.

The basic mechanics of debt assignment were apparently not lost on BOA, because the Settlement Agreement on which Soucy relies did not purport to accord him any relief. Soucy was indeed a member of the *Ross* settlement class, which included all persons holding a BOA credit card from the time BOA first included an arbitration clause in any cardholder agreement through the February 23, 2010 settlement date. (Settlement Agreement §§ 2(w), 4(a).) Soucy opened his account one year before the *Ross* lawsuit was filed and his Cardholder Agreement included an arbitration provision, so it is safe to assume that he held his BOA credit card during the covered period. In this case, however, class membership alone did necessarily yield relief because the settlement was limited to business practice changes. And although the Settlement Agreement required BOA to amend its cardholder agreements and change its approach to arbitration clauses, none of the changes applied to cardholders, like Soucy, whose accounts BOA did not own on the February 23, 2010 settlement date. Soucy nevertheless argues BOA waived its right to enforce his arbitration clause and class waiver under Sections 3(a), 3(c), and 13(b) of the Settlement Agreement. Notwithstanding BOA's previously discussed inability to waive rights it did not own, the court addresses each cited provision of the Settlement Agreement below.

In Section 3(a), BOA agreed to remove arbitration clauses and class action waivers from

*its* existing cardholder agreements and mail *its* affected customers new cardholder agreements by June 30, 2010.[4] (Settlement Agreement § 3(a) (emphasis added).) BOA did not amend Soucy's Cardholder Agreement or mail him a new cardholder agreement because BOA had no agreement with Soucy after selling his account to WAP II three years earlier.

In Section 3(c), effective on December 11, 2009,[5] BOA agreed not to enforce an arbitration clause or class action waiver against a member of the settlement class based on currently existing or pre-existing cardholder agreements. (Settlement Agreement § 3(c).) Soucy contends that BOA's commitment with regard to "pre-existing cardholder agreements" necessarily implies a waiver applicable to previously sold accounts. The court does not agree. The purpose of Section 3(c) was to cover the 201-day period between the settlement in principle and the deadline for removing the arbitration and class action provisions from BOA's cardholder agreements, after which the non-enforcement commitment would be superfluous. Furthermore, BOA, the only party bound by Section 3(c), would rarely if ever seek to enforce an arbitration or class action provision of an assigned account; invoking either clause would be the prerogative of the assignee or the debtor.

Finally, in Section 13(b), for any account BOA transferred or assigned to a third party after February 1, 2010, BOA agreed to contract with the third party to abide by BOA's commitment not to enforce the arbitration provision or class action waiver. (Settlement Agreement § 13(b).) Section 13(b), like Section 3(c), was a stopgap intended to cover any transfers or assignments between the settlement and the deadline for formally amending BOA's

---

[4] The Settlement Agreement obligated BOA to substantially complete the mailing of amended cardholder agreements within 60 days of May 1, 2010, which is June 30, 2010.

[5] December 11, 2009 is the date on which the parties agreed in principle to the settlement finalized on February 23, 2010. (*See* Settlement Agreement § 2(v) ("'MOS Date' means December 11, 2009, the date on which the Memorandum of Settlement was executed.").)

cardholder agreements. Section 13(b) is particularly unhelpful to Soucy because it accords precisely the relief he seeks in this case, but limits that relief to accounts transferred or assigned after the settlement, *i.e.*, accounts BOA owned and controlled at the time of the settlement.

Accordingly, for the reasons discussed above, none of Soucy's cited provisions of the Settlement Agreement constitute a waiver of the arbitration or class action provisions of *Soucy's* Cardholder Agreement. BOA's decision not to afford Soucy or any other former cardholder non-monetary relief was understandable because BOA lacked the legal authority to waive or amend rights it did not own at the time of the settlement. By contrast, BOA could have provided former cardholders monetary compensation, but chose not to do so; monetary claims are expressly "carved out" of the Settlement Agreement and remain available to Soucy (assuming they are not time-barred). (Settlement Agreement § 2(h).) The Settlement Agreement likewise does not release non-parties, such as WAP II and CMS, from liability, claims, or defenses arising out of BOA's alleged acquisition of the arbitration and class action provisions through anticompetitive means. But Soucy has not raised BOA's alleged collusion as a basis to void the arbitration and class action provisions in his Cardholder Agreement and the argument is therefore waived. *See generally United States* v. *Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Because the court has rejected Soucy's only basis for finding his arbitration clause and class action waiver invalid, and because Soucy concedes that this claim under the FDCPA falls within the scope of the arbitration clause, Defendants' motion to compel arbitration must be granted. *Zurich Am. Ins. Co.*, 417 F.3d at 687.

The only remaining issue is whether this court should dismiss or stay this action pending the outcome of the arbitration. Defendants express a preference for dismissal on the last page of their memorandum but fail to cite authority supporting their request; Soucy understandably did

not address a scenario where the court ruled against him. As Judge (now Chief Judge) Ruben Castillo noted nearly two years ago, there is a growing trend among district courts to dismiss a case when all of the claims alleged therein are subject to arbitration, resulting in "a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Johnson* v. *Orkin, LLC*, 928 F. Supp. 2d 989, 1008-09 (N.D. Ill. 2013) (Castillo, J.) (quoting *Green* v. *SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011)); *see also Soto–Fonalledas* v. *Ritz–Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 473 (1st Cir. 2011); *Ozormoor* v. *T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009); *Poteat* v. *Rich Prods. Corp.*, 91 F. App'x 832, 835 (4th Cir. 2004); *Fedmet Corp.* v. *M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999). The Seventh Circuit has not expressly recognized this exception to the general rule favoring a stay, but has repeatedly affirmed district courts' decisions dismissing suits where all of the claims must be arbitrated according to the agreement. *See, e.g.*, *Johnson* v. *Orkin, LLC*, 556 Fed. App'x 543, 544 (7th Cir. 2014); *Baumann* v. *Finish Line, Inc.*, 421 F. App'x 632, 636 (7th Cir. 2011); *Am. Int'l Specialty Lines Ins. Co.* v. *Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003); *McCaskill* v. *SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002). The reason for such an exception is clear—when all of the claims are subject to a valid and enforceable arbitration agreement, retaining jurisdiction and staying the case serves little purpose and is a waste of judicial resources. *Johnson*, 928 F. Supp. 2d at 1009.

Here, Soucy's single claim for relief—spliced into two separate counts—arises out of CMS's debt collection letter, which Soucy alleges violated various provisions of the FDCPA. Soucy has conceded that his FDCPA claim is within the scope of the arbitration provision. The court therefore finds that this case should be dismissed and not stayed because Soucy's sole

claim for relief is arbitrable.

## CONCLUSION

For the reasons explained above, Defendants' motion to compel arbitration [23] is granted. Because all of the claims set forth in Soucy's complaint are subject to arbitration, Soucy's complaint is dismissed pursuant to Rule 12(b)(3). Soucy must arbitrate his claims on an individual basis as provided by the terms of his Cardholder Agreement. In light of the court's dismissal of his case, Soucy's motion for class certification [3] is moot. Civil case terminated.

ENTER:

*[signature: James F. Holderman]*

JAMES F. HOLDERMAN
District Judge, United States District Court

Date: January 29, 2015